UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GEORGE W. BURNS, III, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:  10-1686 (RC) |
| | : | |
| v. | : | Re Document No.:  15 |
| | : | |
| WASHINGTON METROPOLITAN AREA  TRANSIT AUTHORITY, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

The plaintiff is an African-American former employee of the Washington Metropolitan Area Transit Authority ("WMATA").  He alleges that the defendant retaliated against him, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, after he filed complaints claiming that WMATA's selection process for promotions and other opportunities was biased against African-American males.[1]  The defendant has moved for summary judgment under Federal Rule of Civil Procedure 56.  For the reasons discussed below, the court grants the defendant's motion.

**II.  FACTUAL ALLEGATIONS & PROCEDURAL BACKGROUND**

The plaintiff was hired as a Transit Police officer by WMATA's Metro Transit Police Department ("MTPD") in 1986.  Def.'s Stmt. of Material Facts ("Def.'s Stmt.") ¶ 1.  He was promoted to the position of lieutenant in June of 2004.  *Id.* ¶ 2.  In May of 2008, the plaintiff

---

[1]   The plaintiff's amended complaint also alleges that the defendant engaged in race-based discrimination against the plaintiff, but the plaintiff has voluntarily dismissed this claim.  *See* [Dckt #18].

1

participated in the process to be promoted to captain. *Id.* ¶ 3. He was placed third on the eligibility list for promotion to captain, and was not promoted. Pl.'s Stmt. of Material Facts ("Pl.'s Stmt.") ¶ 10; Def.'s Stmt., Ex. 6; Am. Compl. ¶ 17.

The plaintiff claims that on May 13, 2008, and again on June 9, 2008, he filed complaints with the WMATA Office of Civil Rights ("OCR"), alleging that the defendant's "selection process for promotional and educational opportunities" was biased against African-American males.[2] Am. Compl. ¶ 12. In January of 2009, Sergeant Monica Hockaday, a female officer who the plaintiff supervised, filed a complaint of sexual harassment against the plaintiff with the WMATA OCR. Def.'s Stmt. ¶ 14. The WMATA OCR subsequently conducted an investigation, *id.* ¶ 15, and on April 24, 2009, sent the plaintiff a letter stating that there was "evidence that [he had] made inappropriate and suggestive comments to some of [his] female employees [that did] not rise to the level of a violation of WMATA's Sexual Harassment policy." Def.'s Stmt., Ex. 17 at 1. The letter further stated that the WMATA OCR had made a "no probable cause finding of discrimination." *Id.* at 3. But the WMATA OCR also recommended to Chief Taborn that because the plaintiff had made inappropriate and suggestive comments to MTPD employees, he should be issued a letter of warning. Def.'s Stmt., Ex. 18.

As a result, on May 4, 2009, Chief Michael Taborn sent the plaintiff a "Notice of Discipline," which indicated that his "actions [had been] inappropriate" and "inconsistent with the expected standards of a Metro Transit Police supervisor." Def.'s Stmt., Ex. 4. The notice also stated that the plaintiff's "conduct ha[d] brought discredit" to the MTPD, and that he did not

---

[2]   The plaintiff does not provide any documentation verifying that he made these complaints, however. His claim is based solely on alleged retaliation that he suffered largely for filing such complaints. Yet without substantiating that he engaged in protected activities by complaining about discrimination, there can be no actionable retaliation claims. Nonetheless, because the parties have not raised or briefed this issue, for purposes of resolving this motion, the Court will assume without deciding that the plaintiff engaged in protected activity.

"enjoy [Chief Taborn's] confidence to be a senior leader of [the] organization." *Id.* The plaintiff was thereafter removed from the current eligibility list for the rank of captain, *id.*, but was informed that this would not impact his eligibility to be on the 2010 list. Def.'s Stmt., Ex. 8 at 1.

The plaintiff claims that on June 17, 2009, he filed a complaint against Chief Taborn with the WMATA OCR, alleging retaliation. Am. Compl. ¶ 31.[3] In August of 2009, then-Captain Ronald Pavlik, the plaintiff's direct supervisor, evaluated the plaintiff for the year ending June 30, 2009, giving him an overall rating of "competent" on his performance evaluation. Def.'s Stmt. ¶ 18; *id.*, Ex. 15 ¶ 14. Captain Pavlik's superior officer, Deputy Chief Jeri Lee, reviewed the evaluation and asked Captain Pavlik to change the plaintiff's performance ratings in two to three sub-categories.[4] Def.'s Stmt., Ex. 15 ¶ 16.; Am. Compl. ¶ 38. These ratings were changed downward to "needs improvement." Def.'s Stmt., Ex. 15 ¶ 16. After these changes were made, the plaintiff's overall rating for his performance evaluation was still that of "competent." Def.'s Stmt. ¶ 18.

All candidates for promotion to captain participate in a competitive process. Def.'s Stmt. ¶ 4. They are evaluated based on a final grade, which is the combination of scores from a written exam, an oral interview, and an overall assessment. Def.'s Stmt., Ex. 15 ¶ 2; Pavlik Supplemental Affidavit ("Pavlik Suppl. Aff.") [Dckt. #22-1] ¶ 2. These factors constitute 100% of the final grade. Pavlik Suppl. Aff. ¶ 2.

In addition, the candidate's combined prior two years of performance evaluations can contribute toward increasing that final grade. *Id.* During a performance evaluation, the

---

[3]    As with his other complaints allegedly made to the OCR, the plaintiff has not provided any documentation to substantiate that this complaint was filed. Yet, as noted earlier, for purposes of resolving this motion, the Court will assume without deciding that plaintiff engaged in this form of protected activity.

[4]    The parties differ as to whether the ratings where changed in two, as opposed to three, sub-categories. As indicated below, however, the difference is inconsequential in determining if the plaintiff has raised a genuine dispute of fact as to whether he suffered a material adverse action.

candidate is evaluated in thirteen sub-categories.  Def.'s Stmt. ¶¶ 4, 16.  In each sub-category, the candidate is rated as "outstanding," "exceeds expectations," "meets expectations," "competent," or "needs improvement."  *Id.*  Each rating is assigned a score, where "outstanding" receives a 4, "exceeds expectations" receives a 3, "meets expectations" or "competent" receive a 2, and a rating of "needs improvement" receives no value.  *Id.*  These numbers are totaled for each individual evaluation.  Pavlik Suppl. Aff. ¶ 2.  The resulting two scores are then converted into respective percentages, added together, and multiplied by 10%.  *Id.*  This number then counts toward the final grade as "extra credit" points, to be applied toward the final grade – the two evaluations can provide a combined total of extra credit points that range from 0 to 10.  *Id.*  As a result, because the maximum potential final grade before adding these points is 100, adding these extra credit points to a perfect score can yield a maximum potential final grade ranging from 100 to 110 points.  *Id.*

The plaintiff retired on March 1, 2010, and did not participate in the promotion process held in May of 2010.  Def.'s Stmt., ¶¶ 21-22.  In October of 2010, the defendant brought suit against the defendant alleging retaliation, in violation of Title VII.  The plaintiff claims that the defendant altered his performance evaluation in retaliation for his filing complaints of racial discrimination, a protected activity.  The defendant has filed a motion for summary judgment. The court now turns to the parties' arguments and the applicable legal standards.

### III.  ANALYSIS

#### A.  Legal Standard for a Rule 56 Motion for Summary Judgment

Summary judgment may be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if sufficient evidence exists such that a reasonable jury could return a verdict for the non-moving party.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The moving party bears the initial responsibility of identifying those portions of the record which demonstrate the absence of any genuine issue of material fact.  *Id.* at 323; Fed. R. Civ. P. 56(c)(1)(A) (noting that the movant may cite to "depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials").  In response, the non-moving party must similarly designate specific facts in the record that reveal a genuine issue that is suitable for trial.  *Celotex*, 477 U.S. at 324.  On a motion for summary judgment, the court must "eschew making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-moving party, *Anderson*, 477 U.S. at 255.  Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### B.  Legal Standard for a Retaliation Claim Under Title VII

Generally, to prevail on a claim of retaliation under Title VII, a plaintiff must follow a three-part burden-shifting analysis known as the *McDonnell Douglas* framework.  *Taylor v. Solis*, 571 F.3d 1313, 1320 n.* (D.C. Cir. 2009) (observing that "[r]etaliation claims based upon circumstantial evidence are governed by the three-step test of *McDonnell Douglas Corp. v.*

*Green*"); *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003) (applying the *McDonnell Douglas* framework to a Title VII retaliation claim). The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of [retaliation]. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, [non-retaliatory] reason for the employee's rejection" . . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for [retaliation] . . . . The ultimate burden of persuading the trier of fact that the defendant intentionally [retaliated] against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted) (quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse, and (3) there existed a causal connection between the protected activity and the materially adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-69 (2006); *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). In the retaliation context, the term "adverse action" "encompass[es] a broader sweep of actions than those in a pure discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008). Thus, "[r]etaliation claims are 'not limited to discriminatory actions that affect the terms and conditions of employment' and may extend to harms that are not workplace-related or employment-related so long as 'a reasonable employee would have found the challenged action materially adverse.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64, 68 (2006)). The plaintiff's burden is not great: he "need only establish facts adequate to permit an inference of retaliatory motive." *Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001).

If the employer successfully presents a legitimate, non-retaliatory reason for its actions, "the presumption raised by the prima facie is rebutted and drops from the case." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (internal citation omitted); *Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 494 (D.C. Cir. 2008) (noting that "the prima facie case is a largely unnecessary sideshow"). Upon such a showing by the defendant, the district court need resolve only one question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted [non-retaliatory] reason was not the actual reason and that the employer intentionally [retaliated] against the employee [because he had engaged in protected activity]?" *Brady*, 520 F.3d at 494.

The court must consider whether the jury could "infer discrimination [or retaliation] from the plaintiff's prima facie case and any other evidence the plaintiff offers to show that the actions were discriminatory [or retaliatory] or that the non-discriminatory [or non-retaliatory] justification was pretextual." *Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005) (quoting *Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005)). The court should assess the plaintiff's challenge to the employer's explanation in light of the totality of the circumstances of the case. *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1291 (D.C. Cir. 1998) (en banc).

### C. The Defendant's Alteration of the Performance Evaluation is Not a Materially Adverse Action

The plaintiff claims that his performance evaluation was downgraded in retaliation for filing complaints with the WMATA OCR alleging discrimination and retaliation. Am. Compl. ¶¶ 12, 31. As mentioned previously, establishing a prima facie case of retaliation requires showing that the plaintiff suffered a materially adverse action. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 67-69 (2006). In the retaliation context, an employment action is considered

7

materially adverse if it is "likely to dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68, 70 (internal quotation marks and citation omitted).

The plaintiff indicates that the changing of three sub-categories of his performance evaluation was materially adverse because it prevented him from being promoted to captain. Am. Compl. ¶ 56. He does not offer sufficient evidence, however, to suggest that he suffered a materially adverse action. "Courts have consistently held that where there is no change in benefits, or the performance rating was not tied to an employee's bonus, a negative or decreased performance rating is not an adverse action." *Dorns v. Geithner*, 692 F. Supp. 2d 119, 133 (D.D.C. 2010) (citing *Weber v. Battista,* 494 F.3d 179, 186 (D.C.Cir.2007)). Indeed, this Circuit has stated that poor "performance reviews typically constitute adverse actions only when [they] are] attached to financial harms." *See Baloch*, 550 F.3d at 1199; *Taylor v. Small,* 350 F.3d 1286, 1293 (D.C. Cir. 2003) ("poor performance evaluations are [not] necessarily adverse actions and they should not be considered such if they did not affect[ ] the [employee's] grade or salary") (internal quotation marks and citations omitted).

In this case, the plaintiff does not allege anything indicating that the reduced sub-categories of his performance evaluation affected his salary, or that his review was tied to a bonus, paid leave, or other monetary benefit that he would otherwise receive or was currently enjoying. Further, the revised performance evaluation was only marginally different from his initial evaluation, as a mere two to three sub-categories out of thirteen were downgraded, but the overall evaluation of "competent" remained the same. Def.'s Stmt., Ex. 15 ¶ 16. The defendant maintains that if the evaluation had not been changed, the plaintiff would have received five extra credit points (out of a maximum of ten) for the prior two years of performance evaluations, which would count toward his final grade for promotion eligibility. Pavlik Suppl. Aff. ¶ 2. This

would mean that if the plaintiff had received a perfect final grade of 100 before adding these five extra credit points, adding them would have yielded a final grade of 105 points. The ultimate difference would thus have been a mere five extra credit points counting toward the final grade for promotion eligibility, out of a potential maximum score of 105 points. *Id.* "[T]angible employment action" requires a "significant change in employment status." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). "Minor" employment actions that an employee "d[oes] not like" cannot serve as the basis of a Title VII suit. *Russell*, 257 F.3d at 818 (internal citations omitted). With a minor adjustment of, at most, three sub-categories in his overall review, the plaintiff does not offer enough evidence to show that the alteration caused a significant change in his employment status.

    Finally, the alleged impact on the plaintiff's opportunity for a future promotion is too speculative to be materially adverse. As this Circuit has noted, the effect of a poor performance evaluation is "ordinarily too speculative to be actionable." *Douglas v. Donovan*, 559 F.3d 549, 553 (D.C. Cir. 2009). "[A] single poor evaluation may drastically limit an employee's chances for advancement, or it may be outweighed" by other factors — such as the other elements that constitute the final grade for promotion eligibility — and thus may "be of no real consequence." *Russell,* 257 F.3d at 818. The plaintiff has not demonstrated that five points would have made a difference in his chances for promotion. Because he did not compete in the promotion eligibility process, he did not have a final grade from which to ascertain whether five extra points from his evaluation would have impacted his chances for a promotion. Further, even if he did have a final grade, it would still be speculative whether he would have been promoted. This is because among the top three spots on the promotion eligibility list, the hiring official has the discretion to promote candidates in sequential order or to choose the person that he believes is most qualified,

regardless of their ranking.  Pavlik Suppl. Aff. ¶ 11.  Thus, the plaintiff does not demonstrate that five extra points would have landed him on the promotion eligibility list, and that even if they had, that he would have been chosen.

In addition, although the plaintiff may believe that he was denied "potentially fruitful opportunities," he cannot point to any "concrete changes in the terms, conditions, privileges" of his *current* employment at the time of the alteration.  *Edwards v. EPA*, 456 F. Supp. 2d 72, 85–86 (D.D.C. 2006).  His inability to offer evidence of a "discernible, as opposed to speculative" impact on his current employment renders the effects of the alteration too speculative to be actionable.  *Id.*  Accordingly, the plaintiff does not offer sufficient evidence for a reasonable jury to conclude that he suffered a materially adverse action, and thus does not make out a retaliation claim.

### D.  The Plaintiff Fails to Demonstrate that the Defendant's Legitimate, Non-Retaliatory Reason for its Actions is Pretextual

Even if the downgraded evaluation was a materially adverse action, the defendant has asserted a legitimate, non-retaliatory reason for it, stating that because the WMATA OCR found that the plaintiff had engaged in inappropriate and suggestive conduct toward a female subordinate, his actions were inconsistent with the standards of an MTPD officer and brought the MTPD discredit.  Def.'s Mot. at 5; Def.'s Stmt., Ex. 4.  Because the defendant has successfully articulated a legitimate, non-retaliatory reason for its adverse treatment of the plaintiff, the presumption raised by the prima facie case is rebutted and drops from the case.  *St. Mary's Honor Ctr.*, 509 U.S. at 507; *Brady*, 520 F.3d at 494 (noting that "the prima facie case is a largely unnecessary sideshow").  Thus, the Court turns to the only relevant question: has the plaintiff produced sufficient evidence for a reasonable jury to conclude that this reason for the altered evaluation was not the actual reason, and instead, that retaliation was.  On the record

presented, the Court finds that a reasonable jury could not find in the plaintiff's favor.  *See*

*Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008); *Brady*, 520 F.3d at 494.

The plaintiff challenges the defendant's non-retaliatory basis for his termination as pretextual.  Pl.'s Statement of Material Facts ¶ 7.  Each of the arguments that he puts forward fail, however.  The plaintiff contends that he did not sexually harass his subordinate, and that the defendant thus had no reason to downgrade his evaluation other than retaliation.  *Id.*  Yet even as the OCR report may not have found that he sexually harassed others, it did conclude that he engaged in inappropriate conduct, which the plaintiff does not address.  More saliently, however, the essential question is not whether the plaintiff actually engaged in any wrongdoing, but whether Chief Taborn or Deputy Chief Lee honestly and reasonably believed the results of the WMATA OCR's investigation.  *Brady*, 520 F.3d at 496 ("The question is not whether the underlying sexual harassment occurred; rather, the issue is whether *the employer honestly and reasonably believed* that the underlying sexual harassment incident occurred.");[13] *Musick v. Salazar*, 839 F. Supp. 2d 86, 97-98 (D.D.C. 2012) (same); *Asewole v. PSI Services*, 798 F. Supp. 2d 57, 63 n.4 (D.D.C. 2011) (same); *Dunning v. Quander*, 468 F. Supp. 2d 23, 32 n.10 (D.D.C.

---

[13]     In *Brady*, the Circuit specifically rejected what the plaintiff attempts to do here: create a dispute of fact by merely denying that the underlying misconduct occurred.  *Brady*, 520 F.3d at 496 ("Allowing Brady to end-run summary judgment in these circumstances would create significant practical problems.  Employers obviously have to resolve factual disagreements all the time in order to make employment decisions regarding hiring, promotion, discipline, demotion, firing, and the like. In many situations, employers must decide disputes based on credibility assessments, circumstantial evidence, and incomplete information. But Brady's argument would mean that every employee who is disciplined, demoted, or fired for alleged misconduct could sue for employment discrimination based on race, color, religion, sex, or national origin-merely by denying the underlying allegation of misconduct-automatically obtain a jury trial. Brady cites no support for that proposition, which would wreak havoc on district courts' orderly resolution of employment discrimination cases and improperly put employers in a damned-if-you-do, damned-if-you-don't posture when addressing disciplinary issues in the workplace.").

2006) (declining to review *de novo* results of an investigation because the court is not to act as a super-personnel department).

The plaintiff here has presented no evidence to suggest that Chief Taborn or Deputy Chief Lee did not honestly believe the WMATA OCR's conclusion. Though the OCR report noted that "[t]here [was] insufficient evidence to show [that] the Complainant [was] subjected to repeated instances of hostile environmental sexual harassment . . .," it did not completely absolve the plaintiff of wrongdoing, as it stated that "there [wa]s evidence that [the plaintiff had] made inappropriate and suggestive comments to some of [his] female employees." OCR Report, [Dckt. #15-17] at1- 2. The report further stated that the plaintiff engaged in "inappropriate" contact with subordinates when seeking witnesses on his behalf, which reflected "poor judgment" on his part. *Id.* at 1. Thus, while the report did not make a finding of conduct that rose to the level of violating WMATA's sexual harassment policy, it did find that the plaintiff had engaged in inappropriate behavior, and gave him a warning that if he displayed similar behavior in the future, it would "result in a probable cause finding of discrimination and subject[ him] to appropriate disciplinary action." *Id.* at 3. The WMATA OCR further recommended that Chief Taborn issue the plaintiff a letter of warning. Def.'s Stmt., Ex. 18. Issuing a performance appraisal that reflected these findings was an eminently reasonable response.

Accordingly, because the plaintiff's behavior was egregious enough to warrant a finding of discrimination and discipline if it was repeated, it is reasonable that Chief Taborn and other supervisors felt that his actions were "inconsistent with the expected standards of an [MTPD] police supervisor," and that his evaluation should have reflected that and been downgraded. Def.'s Stmt., Ex. 15-4. In addition, the defendant submitted deposition testimony from Deputy Chief Pavlik that the plaintiff's evaluation had been changed because the OCR found that he had

12

engaged in inappropriate conduct.  Def.'s Stmt., Ex. 15-15, ¶ 16; *see Brady*, 520 F.3d at 495 (determining that an employer producing deposition testimony from its decision-maker that its plaintiff was demoted because he had engaged in wrongdoing demonstrated that the employer honestly and reasonably believed that the underlying misconduct had occurred).  Further, the OCR report indicated that the accusations against the plaintiff were thoroughly and independently investigated, as it discussed whether Sergeant Hockaday had taken the appropriate steps to make the plaintiff aware that his behavior was offensive, and also provided information from a wide range of individuals that it had interviewed.  Def.'s Stmt., Ex. 15-17 at 1-2; *see Brady*, 520 F.3d at 495 (finding that indications that the accusations had been thoroughly and independently investigated contributed to showing that the employer honestly and reasonably believed that the underlying misconduct had occurred).

The OCR report also stated that several other females from within and outside of the MTPD corroborated that they had heard the plaintiff make comments that they considered "subtle flirts of personal interest."  Def.'s Stmt., Ex. 15-17 at 2; *see Brady*, 520 F.3d at 495 (stating that providing evidence of others having witnessed and complained about the misconduct served as supporting evidence in demonstrating that the employer honestly and reasonably believed that the wrongdoing had occurred).  The Court thus concludes that it was reasonable for the MTPD to rely on the investigation's conclusions, particularly because the plaintiff produces no evidence to indicate that the defendant's conclusions were dishonest or unreasonable.  *See Brady*, 520 F.3d at 496.

The plaintiff also contends that the temporal proximity between his filing a complaint against Chief Taborn in June of 2009, and the defendant changing his performance evaluation in August, indicate that the evaluation was altered as a form of retaliation for his complaint.  Pl.'s

Mot. at 9.  Although "temporal proximity can . . . support an inference of [such] causation," the defendant's legitimate non-retaliatory justification for changing the plaintiff's evaluation here has not been rebutted.  *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007).  Thus, as this Circuit has held, if the plaintiff's "only evidence linking his protected activities to the adverse employment action[] is the proximity in time between [them," the Court cannot make a finding that the defendant's justification is pretextual, as "positive evidence beyond mere proximity is required to defeat the presumption that the proffered explanation[ is] genuine."  *Id.* at 530.  Indeed, the plaintiff "[l]acking a smoking gun from the [MTPD] that would establish causation" between the protected activity and the adverse action, and thereby seeking that the Court "infer a causal link" based on temporal proximity alone, will not be entertained.  *Id.*; *see also Talavera v. Shah*, 638 F.3d 303, 313 (D.C. Cir. 2011).

Accordingly, the plaintiff fails to demonstrate that the legitimate, non-retaliatory reason for the downgrading of his performance evaluation was pretextual.  Because the plaintiff has failed to produce sufficient evidence for a reasonable jury to find that the MTPD's proffered reason to downgrade his evaluation was not the actual reason, and that the MTPD actually retaliated against him, his claims are dismissed.  *See Ginger v. District of Columbia*, 527 F.3d 1340, 1347 (D.C. Cir. 2008); *Brady*, 520 F.3d at 495 ("if an employer's stated belief about the underlying facts is reasonable in light of the evidence, there ordinarily is no basis to permit a jury to conclude that the employer is lying about the underlying facts").[5]

---

[5] In addition to articulating the plaintiff's race-based retaliation claim, the amended complaint alleges that the plaintiff was retaliated against for filing complaints alleging that the defendant's selection process for promotional and educational opportunities was "biased against . . . persons over 40 years of age."  Am. Compl. ¶ 12.  There is no basis for alleging an age-based retaliation claim within the ambit of Title VII, however.  *See* 42 U.S.C. §§ 2000e *et seq.*  Further, the plaintiff does not plead any facts indicating that he was retaliated against for making an age-based discrimination complaint.  Thus, he does not make out a viable age-based retaliation claim under any statute that protects against such discrimination.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 24th day of January, 2013.

RUDOLPH CONTRERAS<br>
United States District Judge